UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

JUN 3 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-464-GWU

JERRY R. HAMILTON,                                    PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Hamilton

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Hamilton

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Hamilton

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hamilton

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hamilton

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Hamilton

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jerry R. Hamilton, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of L5-S1 spondylolisthesis, a history of hand pain and arthritic pain, and an anxiety disorder. (Tr. 16). Nevertheless, based in part on the responses to interrogatories from a vocational expert (VE), the ALJ determined that Mr. Hamilton retained the residual functional capacity to return to his past relevant work as an assembler and boatbuilder and, therefore, was not entitled to benefits. (Tr. 18-20). The Appeals Council declined to review, and this action followed.

The ALJ had submitted interrogatories to the VE asking whether Mr. Hamilton, a 39-year-old man with a high school education, could perform any jobs if he were capable of "heavy" level exertion, and was limited to only routine, simple, and nondetailed tasks, where public and co-worker contact was casual and infrequent, where supervision was direct and nonconfrontational, and where changes in the

Hamilton

workforce were infrequent and gradually introduced. (Tr. 126-7). The VE responded that with this set of limitations, Mr. Hamilton could perform his past work as an assembler and boatbuilder, both as he performed them and as they were performed in the national economy. (Tr. 127).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged inability to work due to severe back pain, radiating down his left leg, and swelling and numbness in both of his hands. (Tr. 245-6). His treating family physician, Dr. Steve Morton, submitted office notes indicating that Mr. Hamilton had been complaining of low back pain, as well as finger pain, prior to the time he stopped working (e.g., Tr. 132-3), and in December, 2000, Dr. Morton obtained a series of lumbosacral spine x-rays which were interpreted as showing a bilateral pars interarticularis defect at L5-S1 with Grade I spondylolisthesis; there were also degenerative disc changes at L5-S1. (Tr. 129). Dr. Morton's office notes are difficult to read, but appear to indicate findings of left elbow tenderness and back tenderness on flexion and extension. (Tr. 131). He diagnosed degenerative joint disease of the back and of the left elbow, prescribed Celebrex and Lorcet, and advised his patient not to work or drive on medication. (Id.).

8

Hamilton

Dr. Steven Lamb conducted a consultative examination of Mr. Hamilton on December 22, 2002, and reviewed a new x-ray showing Grade II spondylolisthesis and narrowing at L5-S1. (Tr. 139). His physical examination showed that the plaintiff had psoriatic lesions on the elbows and back, but otherwise Mr. Hamilton was found to have a normal grip, normal range of motion, no spasms, negative straight leg raising, and no impairment in toe and heel walking. (Tr. 138-9). Dr. Lamb concluded that there was clear evidence of a disease process due to spondylolisthesis, but no clear evidence of impairment. (Tr. 139).

Subsequently, Dr. Morton submitted some additional office notes reflecting treatment in 2004, which appear to show, at least on the most recent note, dated September 24, 2004, findings of lower back pain with reduced range of motion and bilateral hand pain. (Tr. 204).[1] Morton completed a physical functional capacity assessment on September 24, 2004 stating that Mr. Hamilton had L5-S1 spondylolisthesis, chronic low back pain, and bilateral hand symptoms consistent with carpal tunnel syndrome. He opined that Mr. Hamilton would be limited to lifting no more than five pounds occasionally, nothing frequently, and was capable of less

---

[1]The plaintiff had also previously described anxiety, and had been tried on Wellbutrin (Tr. 205), but on the most recent visit in September was given Zoloft. (Tr. 204). The physician did not describe any functional limitations due to anxiety, and this was consistent with a previous evaluation by Dr. Kevin Eggerman (Tr. 141-5) and state agency reviewing psychologists who found no medically determinable mental impairment (Tr. 156, 182). The plaintiff does not raise the issue of a mental impairment on appeal.

Hamilton

than full-time standing, walking, and sitting, occasional climbing, never balancing, crouching, kneeling, crawling, or bending, and having limited reaching, handling, pushing, pulling and restrictions on heights, moving machinery, temperature extremes, and vibrations. (Tr. 200-3).

Subsequently, on December 18, 2004, the plaintiff underwent a consultative physical examination by Dr. Kevin Moremon. Dr. Moremon reviewed the examination by Dr. Lamb and the December 4, 2000 lumbosacral spine x-ray. (Tr. 218). His physical examination showed a mildly diminished grip strength bilaterally, but normal range of motion, no muscle spasm, negative straight leg raising and no motor, reflex, or sensory deficits. (Tr. 214-15). Dr. Moremon interpreted the x-ray as showing "very mild spondylolisthesis," with degenerative disc changes. (Tr. 215). He concluded that, based on the x-ray findings and in conjunction with a normal physical examination, Mr. Hamilton likewise had only mild limitations in his ability to lift. (Id.). He felt that the plaintiff could occasionally lift 50-100 pounds, frequently lift 11-50 pounds, and continuously lift up to ten pounds. (Id.). There were no non-exertional restrictions.

On appeal, the plaintiff contends that the opinion of Dr. Morton, as a treating source, should have been binding on the ALJ. While the opinion of a treating source is entitled to great weight, it must be supported by adequate signs, symptoms, and laboratory findings. In the present case, Dr. Morton supported his opinion with

10

Hamilton

cursory and somewhat illegible office notes, which document no treatment between 2001 and 2004, and which give little detail. For instance, there is no indication of how much the plaintiff's range of motion was limited on the occasions when Dr. Morton saw him. There were no objective studies documenting carpal tunnel syndrome. Nor did the notes indicate that the plaintiff was told not to "work or drive" other than on the first occasion when he was given Lorcet in 2001 (Tr. 207), and the physician did not cite medication side effects as a reason for limiting the plaintiff's work activity. Under the circumstances of this case, with very limited documentation from the treating source, two consultative examiners finding few objective abnormalities, and both consultants having access to x-rays, including, in the case of Dr. Moremon, the same x-ray available to the treating source, the ALJ could reasonably have accepted the opinion of Dr. Moremon regarding the physical factors. (Tr. 217).

The decision will be affirmed.

This the ____ 30 ____ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11